Mr. Minch. Good morning, Your Honors. May it please the Court, my name is Theodore Minch and I'm here on behalf of Appellant Djuane McPhaul. This case originated as a state court prosecution in Delaware County, Indiana, wherein Mr. McPhaul was charged, among other things, with five counts. The most important and operative of those counts was a serious violent felon in possession of a firearm and resisting law enforcement. Ultimately, approximately nine months after the case was filed in Delaware County, Indiana, in December of 2013, that case was ultimately dismissed and was refiled pursuant to an indictment in the Southern District of Indiana. In the initial indictment, Mr. McPhaul was charged with one count of possession of a firearm by a serious violent felon under 18 U.S.C. 922. Additionally, Mr. McPhaul was charged with possession of body armor in violation of 18 U.S.C. 931-81. These charges emanated from a pursuit of Mr. McPhaul's vehicle in Delaware County, Indiana, back in December of 2013, and that essentially forms the basis of our contest in this case. Mr. McPhaul went to trial on these charges in October of 2015. He was acquitted of the firearms count and ultimately was convicted as to the body armor. What's important in this case with regard to the issues that have been raised for appeal, and I'll call the issues, really, there's two issues, but there's two points to issue number one, which is with regard to the body armor. In this case, Mr. McPhaul had filed a motion to suppress. That motion to suppress was heard by the Honorable Judge Pratt, and what was asserted by defense in the motion to suppress was that the stop of Mr. McPhaul's vehicle and ultimately the felony stop procedures that were employed by the Ball State University Police Department and the Muncie Police Department, Muncie City Police Department, were illegal, and therefore the firearm that was seized as pursuant to the search of Mr. McPhaul's vehicle and the bulletproof vest or the body armor that was seized from Mr. McPhaul's person should have been suppressed. There was also the issue of a safe that was found in Mr. McPhaul's vehicle. Ultimately, the district court did find that the proceeds, the contents of the safe, which was located in the trunk of the vehicle, should have been and were ultimately suppressed. The issue here is that Mr. McPhaul, under Indiana law, did not engage in felony conduct that would have justified the felony stop procedures employed by the officers in this case. Instructive for this court to consider is a case that ironically had come down from the Indiana Court of Appeals on April 27, 2016, which was after our initial opening brief was filed and just before the government's response brief was filed. And what's instructive in that case is for the first time under Indiana law, the Indiana Court of Appeals recognized that there are situations where an individual may understand that an officer is attempting to stop his vehicle, but yet he may proceed to a location that would offer a safer location for that stop to take place, both for the officer's safety and for the individual who's being stopped. And, in fact, the Court of Appeals set forth, after looking at the different definitions of fleeing under Indiana... How bearing does that have on this case? We don't expect officers to be prescient. Failing to anticipate that a state court might change the law in some respect is not ordinarily a ground for suppressing evidence. Yes, Your Honor, from the outset of this case, by way of our motion to suppress, it was Mr. McFaul's argument that the felony stop procedures that were employed by the officers, by the arresting officers in this case, were, in fact, not justified given the circumstances of the stop. That is, that Mr. McFaul was not attempting to evade the officers in this case. He was driving at a low speed. But, I mean, as you said, you argued that... The problem is the officers didn't know that. And so the question is whether the officers had probable cause to arrest him for using the vehicle to flee. Well, understanding that, Your Honor, I think that the issue more turns on... Would the felony stop procedures that were employed by the officers in this case result in Mr. McFaul being extracted from his vehicle by up to 10 officers at gunpoint? He's ordered from his vehicle. According to one of the officers that testified to Officer Berger at both the suppression hearing and the trial, Officer Berger commented that Mr. McFaul was cooperative. I don't even understand what the significance of that is. Your client had a suspended license. The officers weren't going to let him drive away on a suspended license. So he was going to be taken into custody, and that authorizes a complete search of the vehicle. That's just a straightforward application of Arizona against Gant. Well, Your Honor, there wasn't any officer testimony that he was going to be taken into custody. We don't need testimony. The subjective intent of officers is wholly irrelevant in Fourth Amendment cases. We just ask what probable cause is. That's an objective standard. And objectively, there was probable cause. And under Arizona against Gant, a search is authorized. The contents of anybody's head is irrelevant. Well, Your Honor, I would disagree as to one point, and that is whether there was probable cause. You don't get to disagree with the Supreme Court's ruling about the irrelevance of the contents of people's heads. No, I understood, Your Honor. But the point is whether there was probable cause to effect a felony stop in this felony stop procedure in this case. You keep calling it a felony stop. In federal practice, there's no such thing as a felony stop. There is a stop and a rest. If you are stopped, you are arrested. It's a seizure within the purpose, within the scope of the Fourth Amendment. And as soon as the officers knew, probably as soon as their illegal turn took place, but certainly as soon as the officers knew that your client had a suspended license, this was all perfectly straightforward under Wren. And what people were thinking under Wren is irrelevant. So where do we go from there? Well, Your Honor, in fact, once again, I believe that the issue turns on, and I understand Your Honor's perspective and position that there is no such thing as a felony stop under federal law. The felony stop came from the officers themselves who employed a certain procedure. The question is whether the stop was supported by the doctrine of Wren. And the answer appears to be yes, since it is undisputed that your client was driving with a suspended license. That's probable cause for a stop under Wren. And the next stage is the application of Arizona against Gantt. This is established Supreme Court law. I understood, Your Honor. But the point is as well is that the bulletproof vest wasn't, or the body armor in this case wasn't. But see, once you have probable cause to arrest, then the officers, you're trying to say they didn't have a right to pat him down? Would you be like a lawful pat-down incident to an arrest? Because, see, that's why the probable cause matters. Understood, Your Honor. So you can attack whether they had probable cause, but once they have probable cause they're patting him down unless you're saying he can't pat, they can't pat him down. Understood, Your Honor. But once the, no officer came in and testified that he would have patted him down pursuant to a stop for. The contents of their heads are irrelevant. So before your time runs out, the guidelines, I just want to talk about the using body armor. Because the guidelines define using body armor to mean actively employing it in a manner to protect the person from gunfire. You haven't argued, have you, that this case doesn't fit that definition? Because I'm having a hard time trying to figure out how it fits that definition in this actively employing it in a manner to protect the person from gunfire. But that's not your argument here, is it? You're correct, Your Honor. We did not make that argument. And obviously that is a concern. That argument was not raised. We were focused more on the suppression issue, which would then affect the four-level addition that was made to Mr. McFaul in his sentencing. However, once again, a felony fleeing, even if determined by officers or by the district court judge in this case, my recollection is that there was no determination that this body armor was actually used in the commission of that felony, which was felony fleeing, to protect him from gunfire, as it were. So was that argument made to the district court that it wasn't employed in any way to protect him from gunfire? My recollection is, Your Honor, and actually I litigated that case at the district court levels, that that was raised at the sentencing argument, as part of our sentencing argument. And part of an objection at the sentencing? Yes, to the four-level addition, to the proposed four-level addition. So in the context of the four-level points being added, it was raised specifically that it wasn't used in the manner anticipated under the guidelines? I believe we raised that objection, yes, Your Honor. Thank you very much. I see that my time has run out. I appreciate your time. Thank you. Thank you, Mr. Minch. Mr. Reeds. May it please the court? Brian Reitz for the government. I'd like to pick up Judge Williams with your question. I do not believe there was a specific objection that the body armor was used in connection with the felony. I think that has been forfeited. It certainly has not been raised in the briefing. I think the best explanation for why is Officer Berger testified that McFaul peeked out the door and was maybe sizing the officers up, and there was a gun in the vehicle. So I think the best interpretation to how McFaul was using it was he was debating about whether to step out of the car with the gun and confront the officers. He ultimately did not. But his conduct in the traffic stop, I think, was different because of the body armor. Again, this wasn't raised, but I think that is the best interpretation of what happened there. Just to turn quickly to the stop. As we've heard, it is undisputed that the defendant was driving with a suspended license, which gave the officers probable cause to stop him. As to the Cowan's case, at most, even if it applies to this case, all it says is the fact finder should consider the mens rea of the driver if they were looking for a safe place to stop. The district court judge did that here and considered whether that's what McFaul was doing and ultimately concluded that's not what McFaul was doing. I would also point out that that really only goes to the ultimate finding of guilt or the sentencing guideline enhancement. It does not impact the probable cause at all because, as this court has noted, the officers don't know that. It's best thought of as some sort of an affirmative defense. I just want to go back to this used business. I understand it wasn't argued, but certainly it was not used in the traditional sense in what most of the cases say when you look at the plain language of this. The application note merely says used means that it was worn. Not just possession. Yes, it must be worn. And McFaul here was wearing the body armor. There's no dispute about that. And I think, again, it is difficult because this wasn't something that was fleshed out because there wasn't a specific objection about that. But I think the best interpretation of how it was used beyond being worn, that is if it even needs to be used beyond being worn, is that McFaul was debating confronting the officers and took a long time to get out of his vehicle. He finally did, and he did not with the gun. But I think that he was using it and contemplating what his next step was going to be. And I think it's reasonable to interpret that he may have acted differently if he was not wearing body armor. Because he did not really seem to be afraid of the fact that the officers had guns drawn and pointed at him. Counsel, I'm still not clear on whether or not or what was raised as an issue. And I'm going back to the sentencing as well. What issue was raised by way of a specific objection prior to sentencing in terms of the basis for this enhancement as to the use, the possession, what have you of the body armor? I'm still not clear whether that was actually raised. Your Honor, as we heard at the very opening part of the argument today, it was whether there was an underlying felony. That was the objection throughout, whether it was used in connection with an underlying felony. Whether there was a flee. Whether McFaul's action constituted fleeing. It was not whether the body armor was used. I think that was taken as for granted that it was because he was wearing it. If there are no further questions, the government rests on its briefing. Thank you. Thank you very much. Mr. Minch, the court appreciates your willingness to accept the appointment in this case. And thank you. Thank you very much. The case is taken under advisement.